The Honorable Gunner DeLay State Senator 4200 Free Ferry Lane Fort Smith, AR 72903-2388
Dear Senator DeLay:
This is in response to your request for an opinion regarding the constitutionality of uncodified Act 1481 of 1999, which is entitled "An Act to Extend the Expiration of the Arkansas Pygmalion Commission; to Remove Legislative Members From the Commission; and For Other Purposes." Your specific question is as follows:
Is section 3 of Act 1481 of 1999 unconstitutional or illegal?
As you note, Section 3 of the act states that the Arkansas Pygmalion Commission on Nontraditional Education ("Pygmalion Commission" or "Commission") "shall be composed of sixteen (16) members who are currently serving as members of the board." You have suggested that this invades the province of the executive branch, as the Legislature has thereby mandated which individuals shall be on the Commission.
RESPONSE:
It is my opinion that the act is constitutional. Some explanation of the act will be helpful in understanding the basis for this conclusion.
The Pygmalion Commission was originally established under Act 1288 of 1993, to be composed of sixteen members appointed, as provided therein, by the Governor, the Speaker of the House, and the President Pro Tem of the Senate. See Acts 1993, No. 1288, § 3(a). The Commission was established in order to "focus public attention on . . . the need for alternative learning environments" and to "ensure that needed changes are made . . . to improve educational outcomes for at-risk students." Id. at § 1. Section 3(b) of Act 1288 stated that "[t]he commission shall expire on June 30, 1997 . . . unless the commission is continued by further act of the Arkansas General Assembly."
Act 1288 was amended in 1995 to add two Commission members, to be appointed by the Governor. Acts 1995, No. 596, § 1, amending § 3(a) of Act 1288 of 1993. The 1995 act also amended Section 3(b) of Act 1228 to state that "[t]he commission shall expire on June 30, 1999, unless the commission is continued by further act of the General Assembly." Id.
In 1997, the uncodified 1993 act, as amended by the uncodified 1995 act, was amended to make a slight change in the House and Senate membership on the Commission. See Acts 1997, No. 112, § 30. The 1997 act contained the same language regarding the Commission's expiration on June 30, 1999, unless continued by further legislative act. Id.
We then come to the act in question, Act 1481 of 1999, which is also uncodified as it, too, is temporary in nature. See Acts 1999, No. 1481, § 1 (amending Section 3 of Act 1288 of 1993, as amended by Act 596 of 1995, as amended by Act 112 of 1997, to state that "[t]he commission shall expire on June 30, 2003, unless the commission is continued by further act of the General Assembly.") The 1999 act states that the Commission "shall be composed of sixteen (16) members who are currently serving as members of the board. . . ." Id.[1] I assume that this is the basis for your statement that the legislature has mandated which individuals shall be on the Commission. They were appointed by the Governor under the previous legislation, but they continue serving in accordance with the 1999 act.
It is my opinion that Act 1481 is constitutional in this respect. Nor do I perceive any other legal infirmities with this legislation. As regards the sixteen members, it must be recognized that the Arkansas Supreme Court has adhered to the view that there is no inherent power in the Governor to make appointments to boards and commissions. Clinton v.Clinton, 305 Ark. 585, 810 S.W.2d 923 (1991), citing Cox v. State,72 Ark. 94, 78 S.W. 756 (1904). The court in Clinton quoted from Cox as follows:
 The method of selecting the members of such boards [i.e., public service boards] is a matter to be determined by the Legislature, which can leave it to the Governor to make the appointments, or can, if deemed safe, make them itself.
305 Ark. at 590.
Indeed, Cox v. State, is, I believe, dispositive of the question in this instance. The act at issue in that case created the State Capitol Commission, consisting of five members to be selected by the House and Senate in the manner provided in the act. 72 Ark. at 95. The Governor, believing that the legislature had no power to select the commissioners, made his own appointments. Id. at 97. In upholding the legislature's power to make the appointments, the court rejected the argument that the Governor had the constitutional power to appoint the members of such a board, to wit, "a board created for a special purpose, the members of which are not elective, and whose terms and offices will both expire with the completion of the work for which the board was created." Id. at 100. According to the court:
 [a]s we see it, there is nothing in the constitution which forbids that the members of such a board shall be selected by the legislature. The method of selecting the members of such boards is a matter to be determined by the legislature. . . .
Id.
The Pygmalion Commission was, similarly, created for a special purpose, and the terms of its members will expire with the expiration of the Commission. See Section 1 of Act 1481. It is my conclusion, based upon the foregoing, that the legislature had the power to, in essence, mandate which individuals will serve on the Commission by providing that it will be composed of those currently serving.
It should perhaps be noted, finally, that I have also considered the argument that Act 1481 violates Article 19, Section 9 of the Arkansas Constitution, which prohibits the General Assembly from creating "any permanent State office not expressly provided for by this Constitution." This argument would fail, in my opinion, because Act 1481 clearly contemplates the expiration of the Commission, thus reflecting legislative intent to create a temporary office. As stated by the Arkansas Supreme Court, "the Legislature has the power to determine whether an office to be created is permanent or temporary, whether expressly declared in the Act or not. If it is created as a temporary office, we must assume that the Legislature found it to be such." Greerv. Merchants' Mechanics' Bank, 114 Ark. 212, 216, 169 S.W. 802
(1914). See also Connor v. Ricks, 213 Ark. 768, 212 S.W.2d 552 (1948) andHickenbottom v. McCain, 207 Ark. 485, 181 S.W.2d 226 (1944). The courts will, moreover, presume that permanency was not intended, "and this would be true whether duration of the office was fixed in the Act, or if nothing whatever was said in respect of time." Connor v. Ricks, supra,213 Ark. at 773.
In conclusion, therefore, it is my opinion that if challenged, Act 1481 would withstand constitutional scrutiny.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:eaw/cyh
[1] The 1999 act removed the legislative members from the Commission and added a provision stating that vacancies shall be filled in accordance with the original appointment. Id.